## COMMONWEALTH *vs.* JOHN PELOQUIN.

No. 99-P-1160.

Plymouth. April 4, 2001. - September 6, 2001.

Present: LAURENCE, GILLERMAN, & DOERFER, JJ.

Further appellate review granted, 435 Mass. 1104 (2001).

*Practice, Criminal,* Instructions to jury, Assistance of counsel. *Self-Defense. Constitutional Law,* Assistance of counsel.

The defendant at the trial of a murder case was deprived of the effective as-
sistance of counsel, where the fact that counsel failed to request the proper
jury instructions from the judge, coupled with the judge's faulty instruc-
tions to which the defendant's counsel made no objection, deprived the
defendant of his only defense to the murder charge: self-defense,
unencumbered by any duty to retreat; despite failing to raise the issue in
his first appeal, the defendant was relieved of any procedural impediment
by virtue of his being represented in the first appeal by his trial attorney.
[482-485]

INDICTMENTS found and returned in the Superior Court Depart-
ment on May 19, 1987.

Following review by this court, 30 Mass. App. Ct. 960 (1991),
and a motion for a new trial, filed on December 23, 1993, a
supplemental motion for postconviction relief, filed on May 27,
1997, was heard by *Patrick F. Brady,* J.

*Deirdre Lee Thurber* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the
Commonwealth.

GILLERMAN, J. The single issue on appeal from the denial of
the defendant's motion for a new trial pursuant to Mass. R.
Crim. P. 30(a) and (b) is whether the defendant's trial counsel,
who was also his counsel on the direct appeal, provided ineffec-
tive assistance to the defendant by failing to object to the judge's

instructions, and by failing to request a Castle law instruction,[1] see G. L. c. 278, § 8A.[2] We reverse.

A statement of material facts appears in our decision on the defendant's direct appeal, see *Commonwealth* v. *Peloquin*, 30 Mass. App. Ct. 960, 960-961 (1991). In brief, the defendant shot and killed his half-brother (victim) in the course of an argument between the two men in the defendant's apartment. In the present appeal, we must view the facts presented at trial in the light most favorable to the defendant in deciding whether, as defendant argues, omitted instructions should have been given. See *Commonwealth* v. *Noble*, 429 Mass. 44, 49 (1999). To this end, we have augmented the facts contained in our prior decision with relevant material from the trial record.

The defendant produced evidence of the victim's large size, propensity for violence, his possession of a gun in the defendant's apartment, his previous assault on the defendant, and threats by the victim of imminent serious bodily harm to the defendant during the argument preceding the shooting. A witness at the scene of the shooting heard the victim tell the defendant to put his gun "away or I will stick it up your ass . . . [and that] he was going to rip [the defendant's] head off . . . you're nothing without your guns." According to the testimony, the defendant "kept telling . . . [the victim] to leave [the defendant's apartment], but he stayed . . . He told [the victim] to leave the house . . . several times . . . [but] he wouldn't."

There was also evidence that as the argument with the victim escalated the defendant became frightened. He saw the victim

---

[1]Defendant's counsel did not raise these issues on the direct appeal. *Commonwealth* v. *Peloquin*, 30 Mass. App. Ct. 960 (1991).

[2]General Laws c. 278, § 8A, provides as follows: "In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling."

pull out a gun and stated that he had thought, "he's going to shoot me." It was at that point that the defendant "dove out of the chair [he] was sitting in and fired the gun twice at [the victim, killing him]."

The evidence of the victim's refusal to leave the defendant's apartment, if credited by the jury, would be sufficient to present the question whether the victim was unlawfully in the defendant's apartment and, if so, to present the issue of the availability of Castle law instructions. Compare *Commonwealth* v. *Burbank*, 388 Mass. 789, 794 (1983) ("[a] criminal defendant is entitled to an instruction on self-defense if the evidence, viewed in the light most favorable to him, is sufficient to raise the issue"). See G. L. c. 266, § 120 ("[w]hoever . . . *remains* in . . . the dwelling house . . . after having been forbidden to do so by the person who has lawful control of said premises, shall be punished . . . A person who is found committing such trespass may be arrested . . .") (emphasis added). See also *Commonwealth* v. *Noble*, 429 Mass. at 49 (the law of trespass is "a guide" to determine whether the victim was unlawfully in a dwelling).

Because there was some record evidence from which the jury could infer that the victim became a trespasser in the defendant's apartment and that the defendant reasonably believed that the victim was about to inflict bodily injury or death upon the defendant, the judge would have been required, upon counsel's request, to instruct the jury that if they made such findings the defendant would be entitled to the benefit of the provisions of the Castle law.

As noted, *supra*, that statute provides, in substance, that an occupant of a dwelling charged with killing or injuring a person unlawfully in the occupant's dwelling, may defend on the ground that he acted in the reasonable belief that the trespasser or intruder was about to inflict great bodily injury or death upon him. See *supra* note 2. In such a case, the occupant may use reasonable means to defend himself, and he has *no duty* to retreat from the person unlawfully in his dwelling. See *Commonwealth* v. *Noble*, 429 Mass. at 49, citing *Commonwealth* v.

*Cyr*, 425 Mass. 89, 98 (1997), for the proposition that an occupant of a dwelling has "no duty to retreat from trespasser."[3]

Because — the defendant's argument continues — his counsel neither objected to the judge's instructions regarding retreat,[4] nor did he request the instructions to which he was entitled under the Castle law, and because the judge gave the jury forceful instructions that the defendant's *first* duty was to retreat if at all feasible, see *supra* note 4, the defendant was effectively deprived of his defense that the defendant shot the victim in self-defense. The consequence was, the defendant argues, that defendant's counsel was ineffective at the critical point of the defense, and that his attorney's lapse materially affected the outcome of the trial.[5]

We are persuaded that the lapses in the performance of defendant's counsel fell below what is minimally required by art. 12 and that as a result a viable defense was indeed lost. For its part, the Commonwealth argues that even if defense counsel

[3]The enactment of § 8A was in response to *Commonwealth v. Shaffer*, 367 Mass. 508 (1975), in which the court declined "to adopt the majority rule that one assaulted in his own home need not retreat before resorting to the use of deadly force." *Commonwealth* v. *Gregory*, 17 Mass. App. Ct. 651, 652 (1984).

[4]The judge gave pattern instructions on self-defense. He included instructions that "[t]he defendant was permitted to use deadly force in self-defense only if he had reasonable belief that he was being attacked or immediately about to be attacked and that he was in immediate danger of being killed or seriously injured. *Before resorting to force a person must first use every reasonable means that is available to him to avoid combat. This means that the defendant was permitted to use physical force in self-defense only if he could not get out of the situation in some other way that was available and reasonable at the time. The defendant must have used any avenues of escape that were reasonably available before resorting to force to protect himself if this could be done without exposing himself to further danger . . . .* The issue is whether the defendant's use of force reasonably seemed to be *the only way* to protect himself in the circumstances. In some situations a person might have a clear field and be able to escape by walking away or otherwise getting to safety. . . In other cases such escape routes may not be available" (emphasis added).

[5]As the defendant acknowledges, there can be no remedy for attorney error in most cases unless it is shown that the misstep "materially influence[d] the guilty verdict." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). That is to say, the issue is whether the error was "sufficiently significant in the context of the trial to make plausible an inference that the jury's result might have been otherwise but for the error." *Ibid.*

faltered, the trial outcome was not affected, because retreat was never a live issue at trial.[6] That argument misses the key issue on appeal.[7]

Retreat would become an issue at the trial only if and when the jury failed to find that the defendant was entitled to the protection provided by the Castle law. However, as discussed above, the defendant presented sufficient evidence for the jury to find that he was entitled to Castle law instructions. Consequently, the judge's instruction that the defendant was unconditionally *obliged* to "use[] any avenues of escape that were reasonably available before resorting to force to protect himself. . . ," see note 4, *supra*, was palpable error as a result of the failure of performance of defendant's counsel. See *Commonwealth* v. *Gregory*, 17 Mass. App. Ct. 651, 652-653 (1984) (judgment reversed where judge's instructions "were substantially in accord with the law prior to the enactment of § 8A").

In sum, the failure of counsel to request the proper jury instructions from the judge, coupled with the judge's faulty instructions to which defendant's counsel made no objection, deprived the defendant of his only defense to the murder charge: self-defense, unencumbered by any duty to retreat. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). That is enough in the circumstances here to constitute ineffective assistance of counsel. While this issue could have been raised in the defendant's first appeal — potentially providing a basis for waiver of the claim — the defendant is relieved of any such procedural impediment by virtue of the fact that he was

---

[6]The Commonwealth also argues that the defendant was not entitled to a Castle law instruction because the victim was *lawfully* on the defendant's premises. Whether the victim was unlawfully on the premises, using G. L. c. 266, § 120, as a guide, see *Commonwealth* v. *Noble*, 429 Mass. at 49, was a question for the jury to decide on the evidence presented and upon proper instructions from the judge. See *Commonwealth* v. *Richardson*, 313 Mass. 632, 637 (1943). See also Model Jury Instruction for Use in the District Courts, Instruction 5.34 (1995 revision).

[7]The scene of the homicide was the defendant's apartment. Obviously there was an escape route — the front door of the apartment. In that context the Commonwealth's argument that retreat was not a live issue at the trial ignores what every reasonable juror would know — that there is a door in every apartment that provides ingress and egress. It was that sure knowledge that made the judge's erroneous instructions so harmful.

represented in his first appeal by his trial attorney. See *Commonwealth* v. *Lanoue*, 400 Mass. 1007, 1008 (1987).

The judgment is reversed and the verdict is set aside. The order denying the defendant's motion for a new trial is reversed, and the case is remanded to the trial court for such further proceedings as the Commonwealth may elect to pursue.[8]

*So ordered.*

---

[8]We note that the jury convicted the defendant of murder in the second degree. In the event of a re-trial, "[i]f any view of the evidence supports the inference that [the defendant] used excessive force in repelling the [victim], a charge on manslaughter would be appropriate." *Commonwealth* v. *Cyr*, 425 Mass. 89, 98 (1997), *S.C.*, 433 Mass. 617 (2001). See also *Commonwealth* v. *Lapointe*, 402 Mass. 321, 329 (1988).